# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ODELL RHODES                                                                                    PETITIONER
ADC #116139

V.                                    NO. 5:15cv00225-BRW-JTR

WENDY KELLEY, Director,                                                                         RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, Odell Rhodes ("Rhodes"), an inmate in the Arkansas Department of Correction ("ADC"). *Doc. 2*. Before addressing Rhodes's habeas claims, the Court will review the procedural history of the case.

Rhodes is currently serving an aggregate twelve-year sentence in the ADC for multiple offenses, imposed between 2005 and 2013. These sentences stem from convictions for: possession of ephedrine (probation revocation); failure to appear; possession of drug paraphernalia; theft by receiving; possession of controlled substances; possession of controlled substances with intent to manufacture; possession of drug paraphernalia with intent to manufacture; aggravated assault; fleeing; second-degree battery; and theft of property. *Doc. 5-2, at 1-9*.

On December 7, 2012, the Arkansas Parole Board (the "Board") voted to transfer Rhodes from the ADC to parole status under the supervision of the Arkansas Department of Community Correction ("ACC").[1] *Doc. 5-3, at 5-6*. On December 18, 2012, the Board entered an Order of Conditional Release.[2] *Id. at 1-3*.

On March 27, 2013, the Board revoked Rhodes's parole for violating conditions concerning reporting, residency/travel, obeying all laws, and not associating with prohibited persons. He was placed in the Technical Violator Program. *Doc. 5-4*. On

---

[1] The ACC "administer[s] the provision of parole services in coordination with the Parole Board and in cooperation with the Department of Correction." Ark. Code Ann. § 12-27-125(b)(7) (Supp. 2015). Eligible offenders are "transferred" from the ADC to the ACC for parole supervision. *Id.* §§ 12-27-127, 16-93-101(7), 16-93-1202(11) & (12)(A).

[2] The conditions of release included: (1) reporting to his parole officer as directed; (2) obtaining approval to change his residence, to stay away from his residence overnight, or to leave his assigned county; (3) obeying all federal, state and local laws; (4) not associating with convicted felons or other persons his parole officer had instructed him to avoid; and (5) not associating with the victim or the victim's family. *Doc. 5-3, at 3*.

August 29, 2013, Rhodes was returned to parole status under ACC supervision. *Doc. 5-2, at 10*.

On September 17, 2013, Rhodes was sentenced, in Washington County Circuit Court, to two concurrent five-year sentences for theft of property and theft by receiving. Both of those new sentences were ordered to run concurrently with "the undischarged portion of [the] time [Rhodes was] now serving." *Id. at 5-6*. On the same date, the Board again revoked Rhodes's parole for not obeying all laws, in violation of the conditions of his release. *Id. at 23*; *Doc. 5-5*. On October 30, 2013, Rhodes was returned to ADC custody. *Doc. 5-2, at 10*.

On April 10, 2014, the Board held a parole hearing and denied, for one year, Rhodes's transfer from the ADC to ACC parole supervision, citing his "new time" and previous release history.[3] *Id. at 23; Doc. 5-6*. On May 11, 2014, the Board denied reconsideration of its decision. *Doc. 5-2, at 23; Doc. 5-7*.

On April 9, 2015, a Board member screened Rhodes's case and recommended that he be transferred to parole status under ACC supervision. *Doc. 5-8*. After holding a hearing, the full Board rejected that recommendation and denied transfer for one year. *Id.; Doc. 5-2, at 23*. On May 24, 2015, the full Board unanimously denied

---

[3]The record shows that, between 2006 and 2013, Rhodes absconded from ACC supervision five times and, on several occasions, committed new criminal offenses while under supervision. *Doc. 5-2, at 5-12*.

reconsideration of its decision. *Doc. 5-9; Doc. 5-2, at 23*.

On July 9, 2015, Rhodes initiated this § 2254 habeas action. In his habeas papers, he argues that the Board's decisions in April 2014 and in April 2015: (1) violated state law and Parole Board policy; and (2) violated his due process rights under the United States Constitution. *Docs. 2 & 7*.

Respondent contends that Rhodes's claims are not cognizable in a § 2254 habeas action. *Doc. 5*.

For the reasons explained below, the Court recommends that this habeas action be dismissed, with prejudice.

## II. Discussion

Rhodes argues that, in denying him parole in 2014 and in 2015, the Board violated Ark. Code Ann. § 16-93-615(a)(2)[4] and corresponding language in the

---

[4] The statute provides:

    (A)    When one (1) or more of the circumstances in subdivision (a)(1) of this section are present, the Parole Board shall conduct a hearing to determine the appropriate- ness of the inmate for transfer.

    (B)    The Parole Board has two (2) options:

        (i) To transfer the individual to the [ACC] accompanied by notice of conditions of the transfer ...; or

        (ii) To deny transfer based on a set of established criteria and to accompany the denial with a prescribed course of action to be undertaken by the inmate to rectify the Parole Board's concerns.

Arkansas Parole Board Policy Manual.[5] According to Rhodes, the Board's "blanket denial for one year" is not one of the "two options" allowed by the statute and Board policy. He asks the Court to order the Board "to immediately release him on parole." *Doc. 2, at 4*.

A federal court may issue a writ of habeas corpus only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a). There is no federal constitutional interest in having state officials follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th

---

        (C)    Upon completion of the course of action determined by the Parole Board and after final review of the inmate's file to ensure successful completion, the Parole Board shall authorize the inmate's transfer to the [ACC], ... in accordance with administrative polices and procedures governing the transfer and subject to conditions attached to the transfer.

Ark. Code Ann. § 16-93-615(a)(2) (Supp. 2015).

[5]Section 2.3 of the Manual provides, in part:

When the Board considers an inmate with a [transfer eligibility] date the Board will have only two options:

1.     Transfer the inmate to the ACC with specified conditions ...; or

2.     Deny transfer to the inmate, based on established criteria, until the inmate completes a course of action established by the Board that would rectify the Board's concerns. After the completion of the required course of action ..., and final review of the inmate's file to ensure successful completion, the Board will be required to transfer the inmate to the ACC in accordance with administrative policy and subject to conditions attached to the transfer.

Ark. Parole Bd. Policy Man. § 2.3 (Rev. 2015) (available at www.paroleboard.arkansas.gov/policy-procedures).

Cir. 2003). Therefore, regardless of whether any state laws or Arkansas Parole Board policies have been violated, this Court is limited to determining whether a federal constitutional violation has occurred.

The Fourteenth Amendment to the Constitution provides, in part, that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The United States Supreme Court has recognized that Fourteenth Amendment liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). However, in *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), the Court explicitly held that a convicted person has no federal constitutional or inherent right to be conditionally released before the expiration of a valid sentence. The mere possibility of parole, without more, provides at most a hope that the benefit will be obtained and does not create an entitlement to due process under the Fourteenth Amendment. *Id.* at 11; *see Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (inmate has no federal constitutionally protected liberty interest in the possibility of parole).

In establishing a parole system, a state may, nevertheless, create a liberty interest that is protectible under the Fourteenth Amendment. *Greenholtz*, 442 U.S. at 12; *see Board of Pardons v. Allen*, 482 U.S. 369, 373-81 (1987). A liberty interest

may arise from state law if the "state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials." *Snodgrass v. Robinson*, 512 F.3d 999, 1003 (8th Cir. 2008).

The Arkansas parole statutes provide broad discretion to the Parole Board, the Board of Corrections, the ADC, and the ACC. For example, the statutes provide that the Board "may" grant parole when, in its opinion, "there is a reasonable probability that the prisoner can be released without detriment to the community or himself or herself" and "is able and willing to fulfill the obligations of a law-abiding citizen." Ark. Code Ann. § 16-93-701(a)(1) & (b)(3) (2006). The statutes also clearly provide for discretion on the part of the Board in determining if or when, and under what conditions, a particular inmate will be transferred from the ADC to parole status under ACC supervision, and if or when the inmate will be returned to the ADC. *Id.* §§ 12-27-127(b)(2) & (3), 16-93-615(d)-(g) & (i), 16-93-617, 16-93-1208(a) (2006 & Supp. 2015). The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred under these provisions as a matter of right." *Id.* § 16-93-1210.

The Arkansas Supreme Court has emphasized the broad discretionary authority granted under the state's parole statutes. *Michalek v. Lockhart*, 730 S.W.2d 210, 211 (Ark. 1987); *see Mason v. Hobbs*, 453 S.W.3d 679, 681-82 (Ark. 2015) ("[T]here is

no constitutional right or entitlement to parole that would invoke due-process protection."); *Crossno v. Felts*, 2014 Ark. 262, at 2 (same); *Hodges v. Norris*, 2004 WL 439982, at *2 (Ark. Sup. Ct. Mar. 11, 2004) ("Transfer for parole is not a matter of right.").

The federal courts have repeatedly held that the Arkansas statutes create only a possibility of parole, and thus do not establish any right to release on parole which would invoke due process protection. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Parker v. Corrothers*, 750 F.2d 653, 655-57 (8th Cir. 1984); *see Hamilton v. Brownlee*, 237 F. App'x 114, 115 (8th Cir. 2007) (Arkansas parole statutes do not create protectible liberty interest in discretionary parole decisions, and prisoner did not have protectible liberty interest in having parole board follow its own hearing policy; inmate had "no constitutionally protected liberty interest in the possibility" of parole even when board rescinded "an initially favorable parole decision").[6]

Rhodes's argument focuses on the language of § 16-93-615(a)(2), which is

---

[6]*See also, e.g., Robinson v. Kelley*, 2015 WL 9311923, at *3-4 (E.D. Ark. Nov. 5, 2015) (no due process claim based on the denial of parole because Arkansas's parole laws do not give a prisoner a right to parole), *recommendation adopted* 2015 WL 9305675 (E.D. Ark. Dec. 21, 2015); *Crossno v. Hobbs*, 2014 WL 5419979, at *3-4 (E.D. Ark. Oct. 22, 2014) ("[N]either Arkansas law nor the Board's regulations give rise to a liberty interest in parole[.]"); *Sims v. Hobbs*, 2011 WL 3889711, at *2 (E.D. Ark. Sept. 2, 2011) (regardless of statutory provisions using the word "shall," Arkansas's parole statutes "do not establish any right to release on parole or transfer which would invoke due process protection"); *Ward v. Norris*, 2011 WL 309627, at *2 (E.D. Ark. Jan. 6, 2011), *recommendation adopted* 2011 WL 307990 (E.D. Ark. Jan. 28, 2011); *Tucker v. Norris*, 2009 WL 5066761, at *3-4 (E.D. Ark. Dec. 16, 2009).

repeated in Section 2.3 of the Parole Board manual. This language provides that, once an inmate convicted of certain offenses reaches his parole eligibility date, the Board "has two options": (1) parole the inmate; or (2) deny parole and prescribe a "course of action" for the inmate, upon completion of which the inmate "shall" be paroled. Rhodes characterizes this as "non-discretionary" parole,[7] *i.e.*, the Board *must* either parole an inmate or deny parole with a "course of action." In contrast, inmates convicted of certain violent crimes and sex offenses are eligible for "discretionary" parole. Ark. Code Ann. § 16-93-615(b)(1). In this context, the Board has the "discretion" to simply deny parole without recommending a course of action, or to deny parole *even if* the inmate has complied with whatever "course of action" has been prescribed. *See* Ark. Parole Bd. Policy Man. § 2.4.

However, regardless of which category an inmate falls under, the ultimate decision to grant or deny parole rests on the Board's "opinion [whether] there is a reasonable probability that the inmate can be released without detriment ... and [is] willing to fulfill the obligations of a law-abiding citizen." Ark. Code Ann. § 16-93-701. The Board's manual emphasizes this discretion: "Release or discretionary transfer *may* be granted to an eligible person by the Board, *when, in its opinion, there is a reasonable probability that the person can be released without detriment to the*

---

[7]Neither the statute nor § 2.3 of the Board's manual uses the term "non-discretionary."

*community or him/herself.*" Ark. Parole Bd. Policy Man. § 2.13.

Thus, Rhodes's construction and understanding of the relevant statutes and regulations is flawed. Despite using ostensibly "non-discretionary" or "mandatory" language, the statutory and regulatory scheme, as a whole, merely creates the *possibility* for early release based on the Board's opinion regarding a particular individual.[8]

Rhodes "thinks" the discretionary language of § 16-93-701 was recently added and thus was not in effect at the time of his parole hearings in 2014 and 2015. *Doc. 7, at 2*. To the contrary, the language in question (the Board "may" grant parole when, in its opinion, it is reasonable to do so) has been a part of Arkansas's parole scheme, in some form, for at least forty years. *See* Act 50, § 29, 1968 Ark. Acts 1646, 1666 (formerly codified at Ark. Stat. Ann. § 43-2808 (1977 Repl.)) ("The Parole Board may release on parole any [eligible] individual ... when in its opinion there is reasonable probability the prisoner can be released without detriment to the community or himself."). Based on this long-established discretionary language, the state and federal courts have held many times that Arkansas's statutory parole scheme, as a whole, does not create a protectible liberty interest. Accordingly, because Rhodes has no federal

---

[8]This Court recently rejected a similar argument regarding the "two options" language in *Kennedy v. Kelley*, 2016 WL 385886, *3 & n.5 (E.D. Ark. Jan. 7, 2016), *recommendation adopted* 2016 WL 398170 (E.D. Ark. Feb. 1, 2016).

or state liberty interest in the possibility of obtaining parole, he is not entitled to any due process protections in connection with his parole proceedings.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 2*, be DENIED and this case be DISMISSED, WITH PREJUDICE.

IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED THIS 22nd DAY OF April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE